IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RACHEL GNIEWKOWSKI,

              Plaintiff,

    v.

PACIFIC GROUP RESORTS, INC.,

              Defendant.

Civil Action No.

COMPLAINT FOR INJUNCTION

## COMPLAINT FOR PERMANENT INJUNCTION
## REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF
## DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)

Rachel Gniewkowski ("Plaintiff") seeks a permanent injunction requiring a change in Pacific Group Resorts, Inc.'s ("Defendant" or "Pacific Group") corporate policies to cause Pacific Group's websites to become, and remain, accessible. In support thereof, Plaintiff asserts as follows:

### INTRODUCTION

1.      "Being unable to access websites puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the Senate Comm. on Health, Educ., Labor & Pensions, at 3 (May 14, 2013), *available at* https://www.justice.gov/iso/opa/ola/witness/05-14-13-crt-hill-testimony-re-the-americans-with-disabilities-act-and-entertain.201372314.pdf (last accessed November 22, 2017).

2.      Pacific Group is an international collection of geographically diversified resorts. Each of its properties is less than a three hour drive from one or more major metropolitan markets, and in addition to its various recreational offerings, all offer onsite lodging, dining, and retail.

3.      In an effort to attract customers to its resort locations, Pacific Group owns, operates, and controls various websites, including but not limited to www.wispresort.com, www.wintergreenresort.com, and www.raggedmountainresort.com.

4.      Consumers may use these Websites to learn more about Pacific Group's particular resort locations, including lodging options, special offers, equipment rental, and other services. Consumers can also use the Websites to buy lift tickets and season passes, get live updates on ski conditions, and contact customer service.

5.      Unfortunately, Pacific Group denies approximately 7 million[1] Americans who are visually impaired access to its Websites' goods, content, and services because the Websites are largely incompatible with the screen reader programs these Americans use to navigate an increasingly ecommerce world.

6.      Screen reader programs convert a website's text, buttons, links, and text fields to audio. Without screen reader programs, blind or visually impaired individuals cannot independently access the Internet, where everyday activities such as shopping, banking, and education have become commonplace.

7.      Plaintiff brings this civil rights action against Pacific Group Resorts Inc.  to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with a computer screen reading program—where

---

[1] Perkins School of the Blind (Watertown, MA), *America's Blind Spot: What's Preventing Us From Including Those Who Are Blind in the Sighted World?*, p. 5, *available at* http://www.perkins.org/sites/default/files/perkins-americas-blind-spot-ebook.pdf (last accessed November 27, 2017).

necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

8.     By failing to make its Websites available in a manner compatible with computer screen reading programs, Pacific Group, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress

9.     Because Pacific Group's Websites have never been accessible and because Pacific Group does not have, and has never had, a corporate policy that is reasonably calculated to cause its Websites to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

a)   that Pacific Group retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") and who shall assist it in improving the accessibility of its Websites so the goods and services on them may be equally accessed and enjoyed by individuals with vision related disabilities;

b)   that Pacific Group work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis;

c)   that Pacific Group work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Pacific Group's Websites may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

d)   that Pacific Group work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Pacific Group's Websites may be equally accessed and enjoyed by individuals with vision related disabilities; on an ongoing basis;

e) that Pacific Group work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Websites, along with an e-mail address and toll free phone number to report accessibility-related problems;

f) that Pacific Group retain the Mutually Agreed Upon Consultant to provide onsite training to create accessible content at the design and development stages; and

g) that Plaintiff, her counsel and its experts monitor the Websites for up to two years after the Mutually Agreed Upon Consultant validates the Websites are free of accessibility errors/violations to ensure Pacific Group has adopted and implemented adequate accessibility policies.

10.     Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

11.     The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

12.     Pacific Group purposefully targets and otherwise solicits business from Pennsylvania residents through its Websites. Because of this targeting, it is not unusual for Pacific Group to conduct business with Pennsylvania residents. In fact, the opposite is true: Pacific Group clearly does business over the Internet with Pennsylvania residents, having entered into contracts

4

with Pennsylvania residents that involve the knowing and repeated transmission of computer files over the Internet.

13.     Venue in the Western District of Pennsylvania is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff Gniewkowski's claims occurred.

## PARTIES

14.     Plaintiff Gniewkowski is and, at all times relevant hereto, has been a resident of Allegheny County, Pennsylvania. Plaintiff Gniewkowski is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

15.     Defendant Pacific Group Resorts, Inc. is a Delaware corporation with its principle place of business located at 1389 Center Drive, Suite 200, Park City UT 84098. Pacific Group's Websites are a public accommodation pursuant to 42 U.S.C. § 12181(7).

## FACTS APPLICABLE TO ALL CLAIMS

16.     While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods, content, and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

17.     Individuals with vision related disabilities may access websites using screen reader programs that convert text to audio. Screen reader software provides the primary method by which a blind person may independently use the Internet. Unless websites are designed to be read by

screen reader software, individuals suffering visual impairments are unable to fully access websites and the content and services they make available.

## PACIFIC GROUP'S ONLINE CONTENT

18. Consumers may use Pacific Group's Websites to learn more about its particular resort locations, including lodging options, special offers, equipment rental, and other services. Consumers can also use the Websites to buy lift tickets and season passes, get live updates on ski conditions, and contact customer service.

19. Consumers may use the Websites to connect with Pacific Group's brands on social media, using sites such as Facebook, Instagram, Twitter, and YouTube.

20. The Websites also include important information regarding policies and contact information.

## HARM TO PLAINTIFF

21. Plaintiff Gniewkowski has attempted to use Pacific Group's Websites. Unfortunately, because of Pacific Group's failure to build its Websites in a matter that is compatible with screen reader programs, she is unable to understand, and thus is denied the benefit of, much of the content and services she wishes to access or use.

22. Ms. Gniewkowski attempted to access the Websites with the same screen reader program she uses to browse the Internet, but found it to be largely unusable due to various accessibility barriers. For example:

(a) As to www.wispresort.com:

i. The website does not notify screen reader users of the submenus they may access with a keyboard. As a result, screen reader users, like Ms. Gniewkowski, may be unaware of the content they're missing.

ii.      The website's heading levels are inconsistent and often out of order, such that Mr. Gniewkowski cannot navigate the website without frustration.

iii.     Images throughout the website lack alternate text to describe their content. In fact, some images are simply marked, "graphic."

iv.     Because there are no controls for pausing, forwarding, or reversing the slideshow on the website's homepage, Ms. Gniewkowski has difficulty perceiving and activating the content of one slide before it rotates to the next.

(b)     As to www.wintergreenresort.com:

i.      Several links throughout the website should appear as buttons so that screen reader users may readily navigate to them.

ii.     The website includes a Membership Inquiry Form. Unfortunately, the fields of this form lack proper labels. For example, a screen reader reads the form's first field: "Star first name edit." The field should read: "First name edit required."

(c)     As to www.raggedmountainresort.com:

i.      Images throughout the website lack alternate text to describe their content. In fact, some images are simply marked, "graphic."

ii.     The website's heading levels are inconsistent and often out of order, such that Mr. Gniewkowski cannot navigate the website without frustration.

23.     As a result of visiting Pacific Group's Websites and from investigations performed on her behalf, Plaintiff is aware the Websites include at least the following barriers that deny individuals with visual impairments access to Pacific Group's Websites:

(a)     A text equivalent for every non-text element is not provided;

(b)      Alternatives that present information in a way that sight or hearing impaired visitors can use is not provided for audio-only or video-only pre-recorded media presentations;

(c)      Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

(d)      Text cannot be resized up to 200 percent without assistive technology so that it may still be viewed without loss of content or functionality;

(e)      Not all functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function depends on the path of the user's movement;

(f)      A mechanism is not always available to bypass blocks;

(g)      Keyboard user interfaces lack a mode of operation where the keyboard focus indicator is visible;

(h)      Headings and labels fail to describe their topic or purpose;

(i)      Web pages lack titles that describe their topic or purpose;

(j)      The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context.

(k)      In content implemented using markup languages, elements do not always have complete start and end tags, are nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

(l)      The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

24.     These barriers, and others, have denied Plaintiff full and equal access to all of the services the Websites offer, and now deter her from attempting to use the Websites or visiting Pacific Group's resorts in the future. Still, Plaintiff would like to, and intends to, attempt to access Pacific Group's Websites in the future to research the goods and services Pacific Group offers, or testing the Websites for compliance.

25.     If the Websites were accessible, *i.e.* if Pacific Group removed the access barriers described above, Plaintiff could independently shop for and research products via Pacific Group's Websites.

26.     Though Pacific Group has centralized policies regarding the maintenance and operation of its Websites, Pacific Group has never had a plan or policy that is reasonably calculated to make its Websites fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

27.     The law requires that Pacific Group reasonably accommodate Plaintiff's disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

28.     Plaintiff's above request for injunctive relief is consistent with the work performed by the United States Department of Justice, Department of Transportation, and U.S. Architectural and Transportation Barriers Compliance Board (the "Access Board"), all of whom have relied upon or mandated that the public-facing pages of websites comply with an international compliance standard known as Web Content Accessibility Guidelines version 2.0 AA ("WCAG 2.0 AA"), which is published by an independent third party known as the Worldwide Web Consortium ("W3C"). *Available at* https://www.w3.org/ (last visited November 22, 2017).

29.     Plaintiff has been, and in the absence of an injunction will continue to be, injured by Pacific Group's failure to provide its online content and services in a manner that is compatible with screen reader technology.

### PACIFIC GROUP'S KNOWLEDGE OF WESITE ACCESSIBILITY REQUIREMENTS

30.     Pacific Group has long known that screen reader technology is necessary for individuals with visual disabilities to access its online content and services, and that it is legally responsible for providing the same in a manner that is compatible with these auxiliary aids.

31.     Indeed, as the Disability Rights Section reaffirmed in a 2015 Statement of Interest before the United States District Court for the District of Massachusetts, it has been a "longstanding position" of the Department of Justice "that the ADA applies to websites of public accommodations." *See National Association of the Deaf v. Massachusetts Institute of Technology*, No. 3:15-cv-300024-MGM, DOJ Statement of Interest in Opp. To Motion to Dismiss or Stay, Doc. 34, p. 4 (D. Mass. Jun. 25, 2015) ("MIT Statement of Interest"); *see also National Association of the Deaf. v. Harvard University*, No. 3:15-cv-30023-MGM, DOJ Statement of Interest of the United States of America, Doc. 33, p.4 (D. Mass. Jun. 25, 2015) ("Harvard Statement of Interest").

### THE PARTIES HAVE NO ADMINISTRATIVE REMEDIES TO PURSUE

32.     There is no DOJ administrative proceeding that could provide Plaintiff with Title III injunctive relief.

33.     While DOJ has rulemaking authority and can bring enforcement actions in court, Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiff with relief.

34.     Plaintiff alleges violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of effective communication matters.

35.     Resolution of Plaintiff's claim does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, *e.g.* (a) whether Pacific Group offers content and services on its Websites, and (b) whether Plaintiff can access the content and services.

## SUBSTANTIVE VIOLATION
## (Title III of the ADA, 42 U.S.C. § 12181 *et seq.*)

36.     The assertions contained in the previous paragraphs are incorporated by reference.

37.     Pacific Group's Websites are a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

38.     In the broadest terms, the ADA prohibits discrimination on the basis of a disability in the full and equal enjoyment of goods and services of any place of public accommodation. 42 U.S.C. § 12182(a). Thus, to the extent Pacific Group does not provide Plaintiff with full and equal access to its Websites, it has violated the ADA.

39.     In more specific terms, Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals as a result of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services that comply with their effective communication obligations. *Id.*; *see also* MIT Statement of Interest, p. 4; Harvard Statement of Interest, p. 4.

40.     Auxiliary aids and services are necessary when their absence effectively excludes an individual from participating in or benefiting from a service, or fails to provide a like experience to the disabled person.

41.     Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions.  28 C.F.R. §§ 36.303(b)(2), (4).

42.     In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.  28 C.F.R. §§ 36.303(c)(1)(ii).

43.     By failing to provide its Websites' content and services in a manner that is compatible with auxiliary aids, Pacific Group has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

(a)     denying individuals with visual disabilities opportunities to participate in and benefit from the goods, content, and services available on Pacific Group's Websites;

(b)     affording individuals with visual disabilities access to Pacific Group's Websites that is not equal to, or effective as, that afforded others;

(c)     utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuate the discrimination of others who are subject to common administrative control;

12

(d)      denying individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others; and/or

(e)      failing to make reasonable modifications in policies, practices, or procedures where necessary to afford its services, privileges, advantages, or accommodations to individuals with visual disabilities.

44.      Pacific Group has violated Title III by, without limitation, failing to make its Websites' services accessible by screen reader programs, thereby denying individuals with visual disabilities the benefits of those Websites, providing them with benefits that are not equal to those it provides others, and denying them effective communication.

45.      Pacific Group has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its Websites to be made available without consideration of consumers who can only access the company's online goods, content, and services with screen reader programs.

46.      Making its online goods, content, and services compatible with screen reader programs does not change the content of Pacific Group's Websites or result in making the Websites different, but rather enables individuals with visual disabilities to access the Websites Pacific Group already provides. *See* MIT Statement of Interest, p. 20; *see also* Harvard Statement of Interest, p. 20.

47.      Pacific Group's ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and other individuals with visual disabilities.

48.      Plaintiff's claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

13

49.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

50.     A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Websites are fully accessible to, and independently usable by, individuals with visual disabilities;

51.     A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to bring its Websites into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Websites are fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law—the specific injunctive relief Plaintiff requests is described more fully in paragraph 9.

52.     Payment of costs of suit;

53.     Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including costs of monitoring Defendant's compliance with the judgment (*see Hadix v. Johnson*, 143 F.3d 246 (6th Cir. 1998), *aff'd in part, rev'd in part*, 527 U.S. 343 (1999); *Jenkins v. Missouri*, 127 F.3d 709 (8th Cir. 1997); *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761 (5th Cir. 1996); *Stewart v. Gates*, 987 F.2d 1450, 1452 (9th Cir. 1993) (district court should permit

14

compensation for the postjudgment monitoring efforts by the plaintiffs' counsel that are "useful and necessary to ensure compliance with the court's orders"); *Garrity v. Sununu*, 752 F.2d 727, 738-39 (1st Cir. 1984); *Adams v. Mathis*, 752 F.2d 553 (11th Cir. 1985); *Willie M. v. Hunt*, 732 F.2d 383, 385, 387 (4th Cir. 1984); *Bond v. Stanton*, 630 F.2d 1231, 1233-34 (7th Cir. 1980); *Northcross v. Board of Educ.*, 611 F.2d 624, 637 (6th Cir. 1979) ("Services devoted to reasonable monitoring of the court's decrees, both to ensure full compliance and to ensure that the plan is indeed working . . . are essential to the long-term success of the plaintiff's suit.")); and

54.     The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: November 27, 2017                               Respectfully Submitted,

                                                       */s/ Benjamin J. Sweet*
                                                       Benjamin J. Sweet (PA Bar No. 87338)
                                                       bsweet@carlsonlynch.com
                                                       Kevin W. Tucker (PA Bar No. 312144)
                                                       ktucker@carlsonlynch.com

                                                       **CARLSON LYNCH SWEET KILPELA
                                                       & CARPENTER, LLP**
                                                       1133 Penn Avenue, 5th Floor
                                                       Pittsburgh, PA 15222
                                                       Phone: (412) 322.9243

                                                       *Counsel for Plaintiff*